# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| JEFFERY CAPLER, JR., | ) |
| Plaintiff, | ) |
| v. | ) No. 2:17-cv-00346-JMS-MJD |
| JEANNE WATKINS, DICK BROWN, | ) |
| Defendants. | ) |

**Entry Granting Unopposed Motion for Summary Judgment**

Plaintiff Jeffery Capler, Jr., is a state prisoner. He alleges that the defendants confiscated two photographs of his 8-year-old son making a peace sign in violation of his First Amendment rights while he was incarcerated at Wabash Valley Correctional Facility ("Wabash Valley"). Defendants Jeanne Watkins and Warden Dick Brown seek resolution of this action through summary judgment. Because the confiscated photographs contained images of hand symbols that were potentially detrimental to prison security and photographs without the prohibited hand symbols were available, the defendants' unopposed motion for summary judgment, dkt. [31], is **granted.**

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed.

R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

Mr. Capler failed to respond to the defendants' summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."). This does not alter the summary judgment standard, but it does "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).

## II. Factual Background

### A. JPay

JPay is a private company that partners with federal, state, and county correctional facilities to provide prisoner mail services. Friends and family of offenders housed in the DOC, including Wabash Valley, can use JPay to send money and emails to DOC offenders. Senders may attach photos to JPay emails.

### B. Confiscation of Mr. Capler's Photographs

On all dates relevant to this lawsuit, Jeanne Watkins was employed by the Indiana Department of Correction ("DOC") and worked as the Mail Supervisor at Wabash Valley. Ms.

Watkins' duties included reviewing incoming correspondence to ensure that the correspondence did not run afoul of DOC policies.

On May 15, 2017, Wabash Valley correctional staff received a JPay photo addressed to Jeffery Capler. That same day, Ms. Watkins viewed and confiscated the JPay photo sent to Mr. Capler because it contained a prohibited hand symbol.

Prior to May 15, 2017, the Wabash Valley Security Threat Group Coordinator instructed mailroom staff to prohibit hand signs appearing in offender correspondence from being delivered to offenders at Wabash Valley. This prohibition against hand signs included peace signs because peace signs have been used by Security Threat Groups as a hand sign. A Security Threat Group ("STG") is defined as: a group of offenders that set themselves apart from others; pose a threat to security or safety of staff or offenders; or, are disruptive to programs or the orderly management of the facility.

On May 17, 2017, Mr. Capler received formal written notice that correctional staff confiscated the JPay photo of his son on May 15, 2017. On May 17, 2017, Mr. Capler completed and signed State Form 21682, Disposition of Offender Personal Property/Correspondence, prior to the disposition of the JPay photo of his son. On this form, Mr. Capler indicated that he wanted the JPay photo destroyed. On May 30, 2017, correctional staff destroyed the printed copy of the JPay photo.

On May 19, 2017, Mr. Capler received another JPay photo of his son; however, this time, Mr. Capler's son was not depicted making a hand sign. Wabash Valley staff printed, reviewed, and permitted the delivery of the May 19, 2017, JPay photo to Mr. Capler.

On May 26, 2017, the sender of the JPay photo confiscated by Wabash Valley staff

attempted to send the confiscated JPay photo to Mr. Capler for a second time. Pursuant to the Offender Correspondence Policy, Wabash Valley correctional staff returned the JPay photo to the sender as unacceptable.

Dick Brown, Warden of Wabash Valley, had no personal involvement in the review and censorship of the May 15, 2017, or May 26, 2017, photographs of Mr. Capler's son making a peace sign.

### C. DOC Offender Correspondence Policy

Offender correspondence is governed by the DOC's Offender Correspondence Policy. "Correspondence" includes any letter, package, or printed matter written, initiated, forwarded, sent, received, or transmitted through the U.S. Postal Service, or other private commercial carrier, to or from a confined offender. Photos, emails, or other mail sent via JPay qualifies as correspondence pursuant to the Offender Correspondence Policy.

The purpose of the Offender Correspondence Policy "is to establish a mechanism for offenders to maintain contact with persons in the community through correspondence, printed material and packages in a manner that ensures the safety and security of the persons involved and the facilities." Dkt. 32-2 at 1. "All correspondence sent to an offender is to be opened by a staff person for verification and recording of receipt of property; and, inspection for, and removal of, contraband or prohibited property." *Id.* at p. 9. This includes electronic correspondence sent to offenders via JPay.

Incoming correspondence, including JPay pictures, shall be delivered to offenders without unnecessary delay; for example, incoming letters shall not be held for more than 24 hours. However, incoming correspondence may be confiscated or withheld if the DOC believes that the

correspondence "[p]oses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program." *Id.* Correspondence containing STG signs or symbols are subject to being censored under the Offender Correspondence Policy.

The Offender Correspondence Policy defines "censorship" as: any action taken by departmental staff which results in restricting, deleting, or withholding, beyond that time necessary for normal delivery, of an item of correspondence or a publication, or a part of an item of correspondence. Dkt. 32-2 at 2. Whenever a correctional staff member decides to censor or withhold any correspondence, the offender is to be informed within two (2) working days of the action. *Id.* at 14. Correctional staff shall dispose of any correspondence legitimately confiscated or excluded. *Id.* at 24. Prior to the disposition of the correspondence, State Form 21682, Disposition of Offender Personal/Correspondence, shall be completed and signed by the offender, in the presence of correctional staff. *Id.* Also, before the correspondence is disposed of, correctional staff shall ensure the offender has the opportunity to indicate his or her preferred disposition, including destruction. *Id.*

### III. Discussion

Mr. Capler claims that prohibiting receipt of a photograph of his son making a peace sign violates his First Amendment rights. This claim is brought pursuant to 42 U.S.C. § 1983.

Prisoners have a constitutionally-protected interest in their incoming and outgoing mail correspondence. *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011). Prison officials may, however, impose restrictions on prisoner correspondence if those restrictions are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (adopting the *Turner* reasonableness standard for regulations

on incoming publications sent to prisoners). Such legitimate penological interests might include crime deterrence, prisoner rehabilitation, and protecting the safety of prison guards and inmates. *Van den Bosch,* 658 F.3d at 785.

> In *Turner*, the Supreme Court specifically set forth four factors that courts may weigh in assessing the validity of a prison's regulations: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether the inmates have access to "alternative means" of exercising the restricted right; (3) the "impact [an] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether the regulation is an "exaggerated response to prison concerns."

*Id.* (*quoting Turner*, 482 U.S. at 89–91). "The four factors are all important, but the first one can act as a threshold factor regardless which way it cuts." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010). "Where ... there is only minimal evidence suggesting that a prison's regulation is irrational, running through each factor at length is unnecessary." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009).

In this case, the first and second factors are dispositive. The defendants argue that DOC has a legitimate penological interest in maintaining the internal security of Wabash Valley and preventing gang activity. This interest is promoted by the Offender Correspondence Policy whose purpose "is to establish a mechanism for offenders to maintain contact with persons in the community through correspondence, printed material and packages in a manner that ensures the safety and security of the persons involved and the facilities." Dkt. 32-2 at 1. Incoming correspondence may be confiscated or withheld if the DOC believes that the correspondence "[p]oses an immediate danger to the safety of an individual or a serious threat to the security of the facility or program." *Id.* at 9.

The DOC Security Threat Groups Policy prohibits the delivery of correspondence to offenders containing hand signs. This blanket prohibition against hand signs includes peace signs. The peace sign has been used by STG members in the past as a gang sign. Prison gangs threaten the safety and security of prisons. *See, e.g., Singer v. Raemisch*, 593 F.3d 529, 535 (7th Cir. 2010) (*quoting Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005) ("It is beyond dispute that gangs are 'incompatib[le] ... with any penological system' and that they serve to undermine prison security.")); *Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987) ("[I]t is difficult to conceive of a single factor more detrimental to penological objectives than organized gang activity.").

The undisputed evidence reflects that Ms. Watkins reasonably perceived the JPay photo as a threat to the security of Wabash Valley because the photo showed a child making a hand symbol that has been used as a gang sign. Ms. Watkins' determination that the JPay photo at issue contained a prohibited symbol is entitled to deference. Courts are to accord "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Van den Bosch*, 658 F.3d at 786 (*quoting Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)); *Thornburgh*, 490 U.S. at 416 ("Where the regulations at issue concern the entry of materials into the prison . . . a regulation which gives prison authorities broad discretion is appropriate.").

The second *Turner* factor to be considered is whether the inmates have access to "alternative means" of exercising the restricted right. The record reflects that Mr. Capler was permitted to receive a photograph of his son that did not include a hand sign. Thus, inmates such as Mr. Capler have access to alternative means of receiving family photographs.

Given the strength of the first two *Turner* factors discussed above and the lack of any evidence suggesting that the prison's regulation is irrational, the third and fourth *Turner* factors do not require further discussion. *See Mays*, 575 F.3d at 648.

Based on the undisputed record, this Court concludes that the defendants have a legitimate penological interest in withholding all photographs containing hand signs to promote institutional security. This finding is consistent with two prior Seventh Circuit cases. In *Mays v. Springborn*, the Seventh Circuit recognized that prison officials have a legitimate penological interest in removing photographs from a magazine that contain alleged gang signs. 575 F.3d at 646, 649. In *Jackson v. Frank,* the Seventh Circuit also upheld a prison's decision to ban incoming commercial photographs, even when seemingly benign. 509 F.3d 389, 391–92 (7th Cir. 2007) (affirming summary judgment for prison officials who refused to deliver mail-ordered commercial photographs of celebrities due to burden on prison staff in evaluating each photograph for forbidden content).

In this case, the defendants adequately justified their decision to prohibit the photograph of an alleged gang sign as "reasonably related to legitimate penological interests," *Turner*, 482 U.S. at 89, and Mr. Capler has not overcome the presumption that the officials had "acted within their 'broad discretion,'" *Shaw v. Murphy*, 532 U.S. 223, 232 (2001) (*quoting Thornburgh*, 490 U.S. at 413); *Payton v. Cannon*, 806 F.3d 1109, 1110 (7th Cir. 2015) (inmate must provide evidence opposing prison's security concerns). The defendants are entitled to summary judgment on this basis.

## IV. Conclusion

It has been explained that "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El v. Britton,* 118 S.Ct. 1584, 1598 (1998). This is a vital role in the management of court dockets, in the delivery of justice to individual litigants, and in meeting society's expectations that a system of justice operate effectively. Indeed, "it is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained," and in such cases, summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir. 1983).

Mr. Capler has not identified a genuine issue of material fact as to his claims in this case and the defendants are entitled to judgment as a matter of law. Therefore, the defendants' Motion for Summary Judgment, dkt. [31], is **GRANTED.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 10/17/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JEFFERY CAPLER, JR.
149701
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Nicholas J. Hall
INDIANA ATTORNEY GENERAL
Nicholas.Hall@atg.in.gov

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL
jonathan.nagy@atg.in.gov